**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF**
**IOWA CENTRAL DIVISION**

| | |
|---|---|
| DIANE M. HOFFMAN,<br><br>PLAINTIFF,<br><br>vs.<br><br>PERFORMANT RECOVERY, INC.,<br><br>DEFENDANT. | **Civil Action No.**<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, Diane M. Hoffman ("Plaintiff" or "Diane" or "Hoffman") by and through her attorney, L. Ashley Zubal, and for her Complaint against the Defendant, Performant Recovery, Inc. (hereinafter "Defendant" or "Performant"), states as follows:

## I.    INTRODUCTION

1.  This is an action for damages brought by an individual consumer for the Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## II.    JURISDICTION AND VENUE

2.  Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28

U.S.C. § 1367.   Venue in this District is proper in that the Defendants transact business in Iowa and the conduct complained of occurred here.

## III.   PARTIES

3.   Plaintiff, Hoffman, is a natural person residing in Warren County, Iowa.

4.   Defendant, Performant, is a business principally located in California who is engaged in the collection of debts owed to another in the State of Iowa.

5.   Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

6.   The Defendant, Performant, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

## IV.   STATEMENT OF FACTS

7.   At some point in time, the Plaintiff incurred a financial obligation to the US Department of Education (hereinafter referred to as "student loan" or "the account") that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3).

8.   Sometime thereafter, the debt was assigned, or otherwise transferred to the Defendant for collection, when thereafter the Plaintiff began receiving collection communications from the Defendant in an attempt to collect this debt.

9.   The Plaintiff began receiving collection correspondence from the Defendant sometime in May, 2013.

10. The Plaintiff received collection correspondence from the Defendant dated June 03, 2013. Said correspondence advised the Plaintiff of her student loan default status, the balance, and requested the Plaintiff contact the Defendant to review repayment options, one of which included a loan rehabilitation program. The letter went on to advise if the Plaintiff failed to contact the Defendant, the US Department of Education may initiate wage garnishment and withhold eligible federal funds.

11. Also in June, 2013, the Plaintiff began receiving collection calls from representatives of the Defendant.

12. Sometime during July, 2013, the Plaintiff received a collection call from Defendant's Representative Beth Stevens. Ms. Stevens advised Ms. Hoffman she was in default on her student loan. Ms. Stevens instructed Ms. Hoffman that she must set up immediate payment or steps would be taken to start garnishing Ms. Hoffman's wages. Ms. Stevens then advised Ms. Hoffman she qualified for a rehabilitation program which would prevent garnishment of wages and would allow Ms. Hoffman the opportunity to bring her student loan account into good standing. Ms. Stevens explained that in order to successfully complete the loan rehabilitation program, Ms. Hoffman would be required to make nine (9) consecutive payments in the amount of $607.00 per month.

13. Ms. Stevens then advised Ms. Hoffman she would experience the following if she successfully completed the rehabilitation program: that the account would be brought into good standing, allowing the Plaintiff an opportunity to apply for several different repayment option not otherwise available while in default; that upon completion, the US Department of Education would lower and renegotiate

3

loan payment; that upon completion, $19,484.86 in fees and costs would be removed and forgiven; that upon completion, the Plaintiff would be eligible to start receiving eligible federal funds; and that upon completion, negative and derogatory comments regarding the loan would be removed from the Plaintiff's credit report.

14. To improve her credit and to be eligible for other repayment options, the Plaintiff knew would be necessary to bring her student loan into good standing. The Plaintiff understood from Ms. Stevens' representations that in order to bring the loan into good standing she would need to successfully complete the rehabilitation program. Based on Ms. Stevens' representations, Ms. Hoffman, whose average annual income is approximately $24,000, agreed to enter in the loan rehabilitation program by paying 9 consecutive monthly payments of $607.00.

15. The Plaintiff received a notice from the Defendant dated July 22, 2013. Said notice identified the collector assigned to the Plaintiff's account as Beth Stevens. The notice included, in part, the following representations: a confirmation of an initial payment of $607.00 due on July 26, 2013, followed by regular monthly payments of $607.00 due on the 15th of each month; the agreement would be in place for six months; after a six month period the Defendant may require the Plaintiff provide new financial information; however, if the Plaintiff is in a qualifying rehabilitation program, there would not be a reevaluation after six months and the Plaintiff would continue to make the established monthly payment through the required nine (9) consecutive months.

16. Upon receiving the July 22, 2013 correspondence, the Plaintiff completed the initial financial statement and received confirmation from Ms. Stevens of her enrollment in the rehabilitation program.

17. The Plaintiff initiated payment to the Defendant in the amount of $607.00 on July 26, 2013, and continued consecutive monthly payments of $607.00 as follows: August 15, 2013; September 15, 2013; October 15, 2013; November 15, 2013; December 15, 2013; January 15, 2014; February 15, 2014; March 15, 2014; April 15, 2014; and May 15, 2014.

18. At no point in time was the Plaintiff ever contacted by the Defendant after the initial six months of payment requesting the Plaintiff provide updated financial information for a revaluation or advise that she was not eligible for the rehabilitation program.

19. The ninth consecutive payment pursuant to the rehabilitation program was made on March15, 2014.

20. Sometime in March, 2014, the Plaintiff contacted the Defendant and spoke with Representative Ann Wells. The Plaintiff indicated that March, 2014, would be her ninth payment, and requested further instruction as to what she could expect would happen next.

21. Ms. Wells pulled up and examined the Plaintiff's account. She verified the Plaintiff was in the rehabilitation program. Ms. Wells explained to Ms. Hoffman that one additional withdraw may occur on April 15, 2014. She advised Ms. Hoffman to make sure the money was in her account for the withdraw and that sometime in the next two months she would notice the withdrawals would cease, and at that time her loan would be back in good standing and the US Department

of Education would contact her to renegotiate her new loan payment. Ms. Wells further requested the Plaintiff contact the Defendant if the May 15, 2014 was withdrawn from the Plaintiff's checking account.

22. The Defendant withdrew $607.00 from the Plaintiff's account again on April 15, 2014 and on May 15, 2014.

23. The Plaintiff contacted the Defendant by telephone on May 16, 2014, and again spoke with Representative Ann Wells. The Plaintiff explained that she was concerned as she had completed the nine month rehabilitation program and had not yet been contacted by the US Department of Education for payment renegotiation of her student loan. The Plaintiff requested an explanation.

24. After reviewing the Plaintiff's account, Ms. Wells advised Ms. Hoffman that she did not in fact qualify for the loan rehabilitation program. Ms. Wells indicated Ms. Hoffman had already attempted rehabilitation in the past and because rehabilitation can only take place once over the life of the loan, Ms. Hoffman was no longer eligible for the program.

25. Upon hearing this information, Ms. Hoffman became extremely distraught and began to cry. The Plaintiff explained she did not understand as Representative Stevens repeatedly represented active enrollment in the rehabilitation program, among many other representations, and had received paperwork verifying same. Ms. Hoffman explained the only reason she agreed to the payments was in an effort to reestablish good standing and to begin to rebuild her credit. She further explained she had contacted the Defendant in March, wherein the Defendant assured the program to be in the final stages and again indicated the US

Department of Education would contact Ms. Hoffman shortly to renegotiate her payment.

26. Ms. Wells apologized to the Plaintiff after reviewing her notes of the conversation and verified the Plaintiff had spoken with herself in March. Ms. Wells indicated that because the Plaintiff was not eligible for rehabilitation, her payments would apply only to the current balance, that her loan would remain in default, that no late fees or other penalties would be removed from the balance, that her tax refund would continue to be offset, and negative and derogatory comments would not be removed from Ms. Hoffman's credit report.

27. The Plaintiff asked Ms. Wells why no one had brought this to her attention sooner and asked when the Defendant became aware of her ineligibility. Ms. Wells was not able to provide any further information stating she had not been assigned to the Plaintiff's account.

28. The Plaintiff requested Ms. Wells advise what, if any, current options or programs were available to achieve good standing status. Ms. Wells responded that the Plaintiff was not eligible for any other programs, that her loan would remain in default and that any future payments would be applied to the current balance which included late fees and penalties.

29. Ms. Wells did not advise the Plaintiff that her payments could be lowered or that she may be eligible for a loan consolidation, which may bring the loan into good standing.

30. After speaking with Ms. Wells on Friday, May 16, 2014, the Plaintiff spent the next week in a state of distress, finding it difficult to eat or sleep while

experiencing a constant state of stress and anxiety, among other emotional distress symptoms.

31. On May 21, 2014, the Plaintiff again contacted the Defendant and spoke with Representative Nicole Summer. Ms. Summer initially confirmed rehabilitation status until further reviewing the Plaintiff's account. She then indicated she realized the Plaintiff was not eligible for rehabilitation. The Plaintiff described her previous communication with Defendant's representatives and requested an explanation as to when the Defendant became aware of her ineligibility and why no one contacted her to advise her of same. Ms. Summer stated she did not know the exact date as she was not assigned to the Plaintiff's account but that it may have been likely they realized after the Plaintiff initiated the payment arrangement in July, 2013.

32. The Plaintiff again inquired as to what current alternative options may be available to her. Ms. Summer explained the Plaintiff was not eligible for Income Based Repayment, which is only available if the borrower is in good standing. Ms. Summer only  offered the Plaintiff an opportunity to negotiate a lower payment, which would be applied towards the current balance, and the account would remain in default status.

33. At no point during the conversation did Ms. Summer mention loan consolidation as a way to achieve good standing status.

34. The Defendant has continued to misrepresent that character, amount, or legal status of the Plaintiff's account.

35. The Defendant's numerous misrepresentations were made with knowledge of the true status of the account, or with reckless indifference as to the status of the account.

36. The misrepresentations were made through tactics of a coercive nature to induce the Plaintiff into entering into a payment plan, whereby the Defendant would then profit from the Plaintiff's payments.

37. The acts of the Defendant as described above constitute willful behavior.

38. Had the Plaintiff known she would not be eligible to: regain good standing, regain her right to receive federal funds, be relieved of fees and penalties attached to the loan, be eligible for good standing repayment options such as Income Based Repayment, among others; she would not have agreed to initiate monthly payments in the amount of $607.00 per month.

39. As a result of the Defendant's illegal attempts to collect and numerous misrepresentations, the Plaintiff has suffered actual damages in the form of out of pocket expenses.

40. As a result of the Defendant's illegal attempts to collect and numerous misrepresentations, the Plaintiff has suffered from emotional distress including but not limited to: stress, anxiety, nervousness, confusion, frustration, anger, loss of concentration at work, loss of sleep, crying spells, sense of helplessness, and fear, among others.

**COUNT I**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692 et seq.**

41. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

42. The Defendant and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the FDCPA including, but not limited to, the following provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

    a. 1692e(2)(A) through the false representation of the character, amount, or legal status of any debt;

    b. 1692e(10) through the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;

    c. 1692e(11) by failing, in every communication with the Plaintiff, to state the communication is from a debt collector and that any information obtained would be used for that purpose; and

    d. 1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

43. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** the Plaintiff prays for judgment against Defendant in an amount representing full and fair compensation for the injuries and damages as set forth above, for such attorneys' fees, interest, and costs as allowed by law, and for such other relief as may be just under the circumstances.

## COUNT II
## VIOLATION OF THE IOWA DEBT COLLECTION PRACTICES ACT
### Iowa Code § 537.7103 et seq.

44. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

45. The Defendant and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, the following provisions of the IDCPA, Iowa Code § 537.7103 et seq.

     a. 537.7103(1)(f) through an action or threat to take an action prohibited by this chapter or any other law;

     b. 537.7103(4)(b) by failing, in every communication with the Plaintiff, to state the communication is from a debt collector and that any information obtained would be used for that purpose;

     c. 537.7103(4)(e) through the false representation of the character, amount, or legal status of any debt;

46. As a result of each and every one of the Defendant's violations of the IDCPA, the Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y);

and reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** the Plaintiff prays for judgment against Defendant in an amount representing full and fair compensation for the injuries and damages as set forth above, for such attorneys' fees, interest, and costs as allowed by law, and for such other relief as may be just under the circumstances.

## COUNT III
## Fraud

47. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. As set forth in the Statement of Facts, representatives of the Defendant, in an effort to coerce the Plaintiff into entering in a repayment plan, by way of threat of garnishment and withholding of federal funds, misrepresented the character, amount and legal status of the Plaintiff's student loan account.

49. The Defendant made these representations with actual knowledge of the true nature and status of the Plaintiff's account.

50. The Defendant's continued collection efforts and misrepresentations caused the Plaintiff to rely on said misrepresentations by setting up the payment and thereby continuing payments for eleven months.

51. The Plaintiff has been damaged by the Defendant as previously described.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant in an amount representing full and fair compensation for the injuries and damages as

set forth above, and for such other and further relief the Court deems just and equitable in the premises.

## V.    JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

  /s/ L. Ashley Zubal
L. Ashley Zubal IS9998256
Marks Law Firm, P.C.
4225 University Avenue
Des Moines, IA 50311
(515) 276-7211
(515) 276-6280
ATTORNEY FOR PLAINTIFF